### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
|     KENNITH L. BELL, | : | |
| | : | |
|     Debtor. | : | Bky. No. 09-15352 ELF |
| | : | |

# M E M O R A N D U M

## I. INTRODUCTION

This no-asset chapter 7 case remains open because an adversary proceeding to determine the dischargeability of a debt is pending. Presently before the court are two motions.

On March 6, 2012, Debtor Kennith L. Bell ("the Debtor") filed a Motion to Compel Custodian to Release Funds Pursuant to 11 U.S.C. §543 ("the Debtor's Motion"). (Doc. # 40). The Debtor requests the entry of an order compelling his former employer, NWI Orthodontics, P.C. ("NWI"), to release certain assets presently held in the Debtor's 401(k) account. NWI, which sponsors and administers the 401K plan and made all of the contributions to the account, objected to the Debtor's Motion and then filed its own Motion for Relief from the Automatic Stay ("NWI's Motion"). (Doc. # 44). NWI requests authority to resume prosecuting a pre-petition federal lawsuit that it contends will resolve the parties' competing claims to the 401(k) account. NWI further asserts that the dispute is properly determined in the federal district court case, not by this bankruptcy court.

For the reasons set forth below, I conclude that both Motions should be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

### A. The Parties' Pre-Bankruptcy Relationship

From October 1996 to July 2006, the Debtor was employed by NWI and its predecessor entity (collectively, "NWI"). During his tenure with NWI, the Debtor served as NWI's practice administrator and, later, as its executive director. In approximately 2003, the Debtor was granted a stock ownership interest in the entity. In July 2006, after coming to the conclusion that the Debtor had abused his authority as practice administrator and executive director, NWI's principals terminated the Debtor's employment.

As of the commencement of the Debtor's bankruptcy in July 2009, the Debtor and NWI were adverse parties in two (2) lawsuits.

In the first of the two (2) lawsuits, filed in July 2006, the Debtor sued NWI in the Superior Court of Indiana at No. 64D05-0607-PL6641 ("the State Court Action"), asserting various claims for monetary damages arising from his employment and stock ownership. NWI filed a counterclaim for, inter alia, breach of contract, breach of fiduciary duty, fraud and conversion.

NWI commenced the second lawsuit by filing a complaint against the Debtor in 2008 in the U.S. District Court for the Northern District of Indiana, NWI Orthodontics v. Bell, No. 2:08-cv-332 ("the District Court Action"). (See Doc. # 44-1). NWI brought the District Court Action in its capacity as sponsor and fiduciary of its 401(k) plan ("the 401(k) Plan"). NWI requested a declaratory judgment that:

1. the Debtor caused NWI to pay $19,124.00 in excess contributions into the 401(k) Plan on his behalf;

2. NWI is entitled to setoff the excess contributions against the Debtor's interest in

the 401(k) Plan pursuant to 29 U.S.C. §1109;[1] and

3. NWI is entitled to costs and attorney's fees pursuant to 29 U.S.C. §1132(g)(1).[2]

### B. The Bankruptcy Filing

The Debtor commenced this bankruptcy case by filing a voluntary petition under chapter 7 of the Bankruptcy Code on July 22, 2009. (See Doc. # 1).[3] With the petition, the Debtor filed his bankruptcy schedules and statement of financial affairs. The filing of this bankruptcy case in July 2009 stayed both the State Court Action and the District Court Action.

On Schedule B, the Debtor disclosed his interest in the 401(k) Plan that is the subject of the District Court Action. He valued that interest at $105,831.42. In Schedule C, the Debtor claimed that his interest in the 401(k) Plan was excluded from the bankruptcy estate under 11

---

[1] 29 U.S.C. §1109(a) is part of the Employee Retirement Income Security Act of 1974 ("ERISA"). Section 1109(a) provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

[2] 29 U.S.C. §1132(g)(1) provides:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

[3] Unless otherwise stated, all references to the court docket are to the docket in the main bankruptcy case.

U.S.C. §541(c)(2).[4]

The Debtor's meeting of creditors pursuant to 11 U.S.C. §341 was held and concluded on September 2, 2009. No party in interest objected to the Debtor's claimed exemptions prior to the expiration for doing so. See Fed. R. Bankr. P. 4003(b) (party in interest may object to exemptions within thirty (30) days after meeting of creditors is concluded).[5] Presently, the parties agree that Debtor's interest in the 401(k) account is not part of the bankruptcy estate.[6]

### C. The Adversary Proceeding

On October 30, 2009, NWI Orthodontics, P.C. ("NWI") initiated an adversary proceeding ("the Adversary Proceeding") against the Debtor in this court, requesting a determination that its claims against the Debtor are nondischargeable under 11 U.S.C. §523(a)(4) and (a)(6). (Adv. No. 09-0339, Doc. # 1).[7]

---

[4] 11 U.S.C. §541(c)(2) provides:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

[5] On its face, Rule 4003(b) refers only to objections to property "claimed as exempt." It does not refer to property that a debtor asserts is excluded from the bankruptcy estate under 11 U.S.C. §541(b) or (c).

[6] While it seems intuitive that a debtor's claim of exemption from the bankruptcy estate is effective upon the expiration of the objection deadline, nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure expressly says so. Nor do the rules expressly state when a claim of exclusion under §541(c)(2) is final. In this contested matter, both parties have assumed that the 401(k) account is not part of the bankruptcy estate and I will accept that assumption.

[7] Also joining as plaintiffs were Charles Hurst, Kenneth Hyde and Michael Koufos. The Complaint alleges that the individual plaintiffs are officers and shareholders of NWI and that they are

(continued...)

In the Adversary Proceeding, NWI alleged, inter alia, that, while employed at NWI the Debtor:

1. embezzled and converted funds;

2. awarded himself excessive compensation, shareholder distributions and expense reimbursements;

3. failed to repay a loan from NWI;

4. caused NWI to make excessive contributions on the Debtor's behalf to the 401(k) Plan; and,

5. failed to repay a personal loan received from the 401(k) Plan.

On June 18, 2010, at the suggestion of the parties, the court placed the Adversary Proceeding in suspense, pending the outcome of the State Court Action. (See Adv. No. 09-0339, Doc. #'s 19, 21). On May 16, 2012, the court "reactivated" the Adversary Proceeding and scheduled trial to commence on September 27, 2012. (Adv. No. 09-0339, Doc. # 34).[8]

### D.  The Pending Motions

On March 6, 2012, the Debtor filed the Debtor's Motion.

In the Debtor's Motion, the Debtor alleged that NWI (presumably, in its capacity as a fiduciary of the 401(k) Plan), refused to turn over to the Debtor that portion of his interest in the 401(k) Plan that was undisputed, (i.e., not subject to the claims NWI asserted in the District

---

[7](...continued)
creditors of the Debtor.

[8]     In 2010, the parties had expressed optimism that the outcome of the State Court Action with respect to other defendants might facilitate a resolution of the Adversary Proceeding. When it became clear that would not occur, I entered an order taking the Adversary Proceeding out of suspense.

Court Action), and requested that the court enter an order compelling NWI to turn over the "undisputed" funds to the Debtor. The Debtor's view is that because the value of the 401(k) account exceeds $100,000.00, even if NWI is entitled to collect against his 401(k) account based on the claim raised by NWI in the District Court Action (for $19,124.00, plus attorney's fees),[9] there remains a substantial sum of undisputed funds in the 401(k) account that NWI is withholding unreasonably.

On March 20, 2012, NWI filed an objection to the Debtor's Motion, arguing that the actual amount to which each party is entitled cannot be determined at this time. (See Doc. # 42). NWI asserted that because attorney's fees and costs continue to accrue, it is impossible to determine how much money could be released to the Debtor without prejudicing the claims NWI has raised in the District Court Action. Therefore, according to NWI, the 401(k) funds should not be distributed at this time and should be distributed only after the resolution of the Adversary Proceeding. (NWI Objection to Debtor's Motion ¶ 12) (Doc. # 42).[10]

On May 9, 2012, NWI responded further by filing NWI's Motion. In that motion, NWI asserted that the bankruptcy court lacks jurisdiction to determine the parties' respective rights in the 401(k) funds because the funds are not property of the bankruptcy estate and resolution of the issue would not have any impact on the bankruptcy estate or the administration of this case. (NWI's Motion ¶12). NWI sought relief from the automatic stay to proceed with the District

---

[9] At the June 6, 2012 hearing in this matter, NWI asserted that, based on its most recent calculations, the overpayment into the Debtor's 401(k) account was approximately $35,000.00, plus ongoing attorney's fees.

[10] It is not clear, but NWI's unstated premise may be that it may litigate the District Court Action to conclusion only if its claims against the Debtor are determined to be non-dischargeable under 11 U.S.C. §523(a).

Court Action "so that the rights of NWI and [the Debtor] in the 401(k) funds can be determined." (Id. at ¶ 9).

The Debtor filed a response to NWI's Motion on May 29, 2012, arguing that it should be denied because the 401(k) issues "can be determined in the pending [Debtor's] Motion under Section 543 [of the Bankruptcy Code]." (Debtor's Response to NWI's Motion ¶ 3).

At the court's request, the parties filed memoranda of law in support of their respective positions on the issue of this court's subject matter jurisdiction. A hearing on both pending Motions was held and concluded on June 6, 2012.

### III. THE DEBTOR'S MOTION

#### A. 11 U.S.C. §543(b)

Based on the premise that NWI is a "custodian" of the Debtor's interest in the 401(k) plan, the Debtor asserts that NWI is obligated to turn over the undisputed portion of his 401(k) account pursuant to 11 U.S.C. §543. Section 543(b) provides:

> A custodian shall–
>
> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case . . . .

#### 1. subject matter jurisdiction

NWI's lead argument is that the court lacks subject matter jurisdiction to grant the relief requested in the Debtor's Motion. I address this issue first because, as a general rule, a federal bankruptcy court has an independent duty to satisfy itself that it has subject matter jurisdiction

over any pending matter before reaching the merits of a case. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); In re Mullarkey, 536 F.3d 215, 220-21 (3d Cir. 2008); Hubi v. Nalty, 2011 WL 2292808, at *1 (E.D. Pa. June 8, 2011); In re Olick, 2010 WL 4509828, at *1 n.5 (Bankr. E.D. Pa. Nov. 9, 2010) (citing cases); see also In re Shuman, 277 B.R. 638, 654 n.8 (Bankr. E.D. Pa. 2001).

Bankruptcy subject matter jurisdiction, provided in 28 U.S.C. §1334(a) and (b), potentially extends to four (4) types of title 11 matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. See, e.g., In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2004).

All matters that a bankruptcy court may hear, other than the bankruptcy case itself, fall into two (2) categories: (1) "core proceedings" arising under or arising in title 11 or cases under title 11; and (2) "non-core proceedings" that are otherwise "related to" a case under title 11. See 28 U.S.C. §157(b), (c); Mullarkey, 536 F.3d at 221. Generally speaking, the matters designated as "core" correspond to the "arising in" and "arising under" jurisdictional grant and non-core matters correspond to the "related to" jurisdictional grant in 28 U.S.C. §1334(b). Id.[11]

Further, one can conceptualize core matters as a subset of the matters that are "related to" the bankruptcy case.

> [E]very core proceeding necessarily is also "related to" the bankruptcy case for purposes of 28 U.S.C. 1334(b). One might say that every core proceeding is related, but not every related proceeding is core and that a matter must at least be

---

[11]   The core/non-core distinction does not involve the court's jurisdiction; it affects only "the form of the bankruptcy court's disposition, i.e., whether it is final and appealable to the district court, or a report and recommendation to be reviewed by the district court." Mullarkey, 536 F.3d at 222.

> related to the bankruptcy for the bankruptcy court to exercise any type of subject matter jurisdiction.

In re Universal Mktg, Inc., 459 B.R. 573, 579 (Bankr. E.D. Pa. 2011). Thus, the ultimate jurisdictional question presented in this dispute is whether Debtor's claim for relief is, at minimum, "related to" this bankruptcy case.

In the seminal case, Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original) (citations omitted), the Court of Appeals stated:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether <u>the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy</u>. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Under Pacor, most questions involving the scope of the court's "related to" jurisdiction are determined by focusing on the effect that resolution of the dispute may or may not have on the bankruptcy estate. See, e.g., Shuman, 277 B.R. at 647 ("Typically, litigation which is related to a bankruptcy case is litigation which will affect in some manner the property to be administered by the bankruptcy trustee or the amount or priority of claims to be repaid.").

As NWI suggests, it is difficult to perceive how the parties' dispute over their competing claims to an asset that is no longer property of the bankruptcy estate in a no-asset chapter 7 case satisfies the above formulation of the Pacor test for "related to jurisdiction."[12] However, Pacor

---

[12] A clarification is in order. Under the Pacor test, the bankruptcy court has jurisdiction to resolve disputes that "alter the debtor's rights, liabilities, options or freedom of action." 743 F.2d at 994. This part of the Pacor passage is understood to refer to those rights and actions involving the debtor that have an impact in reorganization and rehabilitation cases under chapters 11, 12 and 13. Under those chapters, the debtor is either acting as the representative of the bankruptcy estate or otherwise has at least some of the powers of a bankruptcy trustee. In chapter 7, the debtor is not the estate representative and therefore, this articulation of the test does not refer to chapter 7 debtors. See generally In re Kahn, 406

(continued...)

does not set out the exclusive test for bankruptcy subject matter jurisdiction. Even if conceptually, all bankruptcy jurisdiction may be reduced to the single inquiry regarding "relatedness," Pacor states the jurisdictional test only for the "related to" jurisdictional prong set forth in 28 U.S.C. §1334(b). In measuring its jurisdiction, the bankruptcy court also must consider whether a matter "arises in" the bankruptcy case or "arises under" the Bankruptcy Code.[13]

Of particular relevance in this matter is "arising under" jurisdiction. Generally speaking, a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy courts "arising under" jurisdiction. Stoe v. Flaherty, 436 F.3d 209, 216 (3d Cir. 2006) ("A case 'arises under' title 11 'if it invokes a substantive right provided by title 11.'" (quoting In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996))).

To the extent that the Debtor's request for relief is grounded in 11 U.S.C. §543, it invokes a substantive right provided by the Bankruptcy Code and it follows that this court has subject matter jurisdiction because the Debtor's claim "arises under" the Bankruptcy Code. See 28 U.S.C. §1334(b); 28 U.S.C. §157(b)(2)(E) (turnover proceedings are core proceedings); Stoe, 436 F.3d at 216 ("arising under" jurisdiction encompasses turnover proceedings). Therefore, I reject NWI's argument that this court lacks subject matter jurisdiction over the Debtor's claim.

---

[12](...continued)
B.R. 269 (Bankr. E.D. Pa. 2009) (bankruptcy court lacks jurisdiction to resolve chapter 7 debtor's claim that creditor breached reaffirmation agreement that was entered into in conformity with 11 U.S.C. §524(d)).

[13]    If all jurisdiction ultimately requires "relatedness," one might say that a matter that "arises in" a bankruptcy case or "arises under" the Bankruptcy Code, within the meaning of 28 U.S.C. §1334(b), is "related to" the bankruptcy case "by definition."

### 2. the merits of the §543(b) claim

The discussion of the merits of the Debtor's §543(b) claim can be brief because the claim indisputably lacks merit on its face.

Section 543 requires <u>a custodian</u> to deliver property of the debtor <u>to the trustee</u>. The present dispute involves neither a custodian nor a bankruptcy trustee.

NWI, in its capacity as fiduciary of the Plan, is not a "custodian" within the meaning of §543. 11 U.S.C. §101(11) defines custodian as a:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

As one commentator has stated, the term "custodian" refers to "prepetition liquidators of the debtor's property, such as an assignee for the benefit of creditors or a receiver, liquidator, or administrator of the debtor's property," <u>i.e.</u>, "persons or entities holding property of the debtor for the benefit of creditors in general." 4 <u>Norton Bankruptcy Law and Practice 3d</u> §62:9 (West 2012). This definition does not encompass a trustee who is administering a retirement plan for the benefit of the trust beneficiaries.

Nor can the Debtor cite a provision of the Bankruptcy Code that confers upon a chapter 7 debtor the powers of a chapter 7 trustee under §543(b). <u>Cf.</u> 11 U.S.C. §522(h) (providing chapter 7 debtors, in certain specified circumstances, transfer avoidance powers of trustee under 11

U.S.C. §§544, 545, 547, 548, 549 or 724(a)).[14]

Thus, §543 is inapplicable in this dispute. Simply stated, the court has jurisdiction, but the Debtor's claim is without merit as a matter of law.

### B.  11 U.S.C. §522(c)

The above discussion of 11 U.S.C. §543 does not entirely dispose of the Debtors's claim for relief. Closely related to the Debtor's §543 turnover theory is a claim for relief under 11 U.S.C. §522(c).[15] Section 522(c) provides that, subject to certain exceptions that are not germane in this matter:

> [P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case . . . .[16]

---

[14]    I note that 11 U.S.C. §522(g) gives the debtor the power to exempt property that the trustee recovers under §543, but that right would arise only after the trustee has invoked that power. Section 522(h), which permits a debtor, in some circumstances, to exercise certain trustee powers, does not incorporate the trustee's powers under §543.

[15]    The Debtor did not expressly state a claim under §522(c) claim in his Motion. However, it is clear that his underlying theory is that his rights under the Bankruptcy Code entitling him to access exempt property have been violated. Because the relevancy of §522(c) was raised at the hearings in this matter and I perceive no prejudice to NWI, I will consider the issue.

[16]    Those exceptions are: (1) debts from certain taxes and customs duties, (2) debts related to domestic support obligations, (3) debt secured by liens that cannot be avoided or voided, including tax liens, and (4) debts for a breach of fiduciary duty to a federal depository institution. 11 U.S.C. §522(c). There is no colorable argument that any of these exceptions are applicable in this matter.

**1. subject matter jurisdiction**

Consistent with the determination that this court has subject matter to consider the Debtor's claim under 11 U.S.C. §543, this court has jurisdiction to consider the §522(c) claim. The issue is controlled by <u>Stoe</u>, where the Court of Appeals instructed that "arising under" jurisdiction exists if the Bankruptcy Code "creates the cause of action or provides the substantive right invoked." 436 F.3d at 217. Here, the substantive right, <u>i.e.</u>, to be free of collection activity directed against property exempted during the bankruptcy case, is provided by §522(c) of the Bankruptcy Code. In short, I reach the intuitive conclusion that the bankruptcy court has subject matter jurisdiction to determine whether a debtor's rights under §522(c) are being violated.[17]

**2. the merits of the §522(c) claim**

The command of 11 U.S.C. §522(c) is plain. Property exempted during a bankruptcy case is not available for satisfaction of a pre-petition debt. This is so even if the pre-petition debt is determined to be non-dischargeable under 11 U.S.C. §523(a), so long as the debt does not fall within one of the enumerated statutory exceptions set out in §522(c)'s subsections (1)-(4). <u>See, e.g.</u>, <u>In re Cunningham</u>, 513 F.3d 318, 323-24 (1st Cir. 2008); <u>In re Vaughn</u>, 311 B.R. 573, 579

---

[17] To be clear, the mere fact that the Bankruptcy Code provides a statutory benefit to a party and that the court has subject matter jurisdiction over a dispute involving that statutory benefit does not necessarily mean that Congress has also authorized a private right of action. See, e.g., In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005) (no private right of action under 11 U.S.C. §506(b)). In <u>In re Padilla</u>, 389 B.R. 409, 423-31 (Bankr. E.D. Pa. 2008), I held that a chapter 13 debtor may invoke equitable power of bankruptcy court under 11 U.S.C. §105(a) to enforce the debtor's rights under 11 U.S.C. §1327(a) because such orders are necessary and appropriate to enforce the provisions of the Bankruptcy Code and do not override any other applicable Code provisions. In my view, a chapter 7 debtor's rights under 11 U.S.C. §522(c) are equivalent to the rights of a chapter 13 debtor under 11 U.S.C. §1327(a), the same principle applies and a debtor has the right to invoke the court's equitable powers under §105(a) to enforce his or her rights under §522(c).

(B.A.P. 10th Cir. 2004).

The protections afforded by §522(c) may not be absolute, however. Section 553(a) of the Bankruptcy Code provides, subject to certain exceptions,[18] that:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

On its face, §553 appears to state that a creditors right of setoff passes through a bankruptcy case unaffected by the Bankruptcy Code. If so, a right of setoff preserved by §553 would seem to "trump" the debtor's bankruptcy exemption rights under §522(c)(1). Perhaps surprisingly, courts are divided as to whether a creditor may assert a setoff preserved by §553 against exempt property otherwise protected under §522(c)(1).[19]

Thus, to resolve this dispute in the Debtor's favor, based on §522(c), I would have to hold that:

1. the claim that NWI has asserted in the District Court Action is <u>not</u> in the nature of a setoff;[20] or

---

[18] Section 553(a) states that it is applicable "[e]xcept as otherwise provided in this section and in sections 362 and 363." The exceptions "provided in this section" are found in subsections (1) - (3), which are exceptions for disallowed claims, certain claims transferred to the creditor by a non-debtor and certain claims arising within ninety (90) days of the commencement of the case.

[19] For discussions of the case law, see, e.g., Miller v. U.S., 422 B.R. 168, 172-73 (W.D. Wisc. 2010); In re Riley, 2012 WL 2064503, at *4-8 (Bankr. W.D. Ky. June 7, 2012).

[20] Setoff is a right of equitable origin designed to facilitate the adjustment of mutual obligations. Its central premise is an ancient one well-grounded in practical logic: If A is indebted to B, and B is likewise indebted to A, it makes sense simply to apply one debt in satisfaction of the other rather than require A and B to satisfy their mutual liabilities separately. In general, setoff is favored under the law in order to avoid a multiplicity of suits, added expense,

(continued...)

-14-

> 2. even if the claim is a setoff claim, it is not a setoff that is preserved by 11 U.S.C. §553;[21] or
>
> 3. even if NWI's claim in the District Court Action is a setoff claim that is preserved by 11 U.S.C. §553, §522(c) overrides §553.

---

[20](...continued)
> inconvenience, injustice and inefficient use of judicial resources.

5 Collier on Bankruptcy ¶ 553.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) ("Collier") (footnotes omitted); see also In re Continental Airlines, 134 F.3d 536, 539 n.3 (3d Cir. 1998).

[21]    Section 553 preserves a creditor's right of setoff when four (4) conditions exist:

>   (1)    The creditor holds a "claim" against the debtor that arose before the commencement of the case;
>
>   (2)    The creditor owes a "debt" to the debtor that also arose before the commencement of the case;
>
>   (3)    The claim and debt are "mutual"; and
>
>   (4) The claim and debt are each valid and enforceable.

Collier, ¶ 553.01[1]; see also Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 262-63 (3d Cir. 2000).

   In the District Court Action, NWI invoked 29 U.S.C. §§1109(a) and 1132(g)(1) and expressly requested that it be permitted a "setoff" against the Debtor's 401(k) plan benefits, (see District Court Complaint ¶40, Doc. # 44-1). According to the Complaint, the Debtor owes money to NWI for excessive contributions to the NWI sponsored 401(k) plan. I note, however, that NWI is not the 401(k) Plan; NWI may be the fiduciary of the 401(k) Plan, but 401(k) Plan is a trust with a separate legal existence from NWI. Thus, it appears that the Debtor owes a debt to NWI in its individual capacity, while the debt that NWI owes to the Debtor is in its capacity as a fiduciary of the 401(k) Plan, making it questionable whether NWI is actually asserting a setoff or whether the claim and the debt are "mutual." See, e.g., Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 373 (1990) (referring to plan and sponsoring union as "distinct legal entities"); Carson v. Local 1588, 769 F. Supp. 141, 144-45 (S.D.N.Y. 1991) ("pension plans . . . exist as separate and distinct legal entities from the employer's business"); In re Carlyle, 242 B.R. 881, 888 n. 4 (Bankr. E.D. Va. 1999) ("A trustee cannot set off against the trust fund held by him his individual demand against the creator of the trust." (quoting First Nat'l Bank v. Johnson, 31 S.E.2d 581, 585 (Va. 1944))); In re Medina, 177 B.R. 335, 349 (Bankr. D. Or. 1994) ("[A]n ordinary debt may not be set off against funds held in trust for the other."), rev'd in part on other grounds, 205 B.R. 216 (B.A.P. 9th Cir. 1996).

In the end, however, it is unnecessary to decide any of these issues. Section 522(c) is inapplicable because the Debtor did not exempt his interest in the 401(k) Plan. On Schedule C, he merely noted that the 401(k) plan was "excluded" from the bankruptcy estate pursuant to 11 U.S.C. §541(c)(2).

The Debtor's exclusion of, rather than exemption of, his interest in the 401(k) Plan leads to the question, whether §522(c) applies to assets that have been excluded from the estate under §541? Based on the plain language of §522(c), I hold that the answer is "no."

I reiterate that §522(c) is clear on its face. It applies to property exempted "under this section." The wording of the statute precludes application of §522(c) to property excluded from the estate under §541(c) or any other section of the Bankruptcy Code. At bottom, the Debtor cannot invoke §522(c) because he did <u>not</u> exempt his interest in the 401(k) Plan under §522.

I recognize that this result may appear like "splitting hairs." From a debtor's perspective, exclusion of an asset from the bankruptcy estate seems to serve the same function as exempting it. For example, prior to the 2005 amendments to the Bankruptcy Code, debtors regularly invoked §541(c)(2) to protect from bankruptcy trustees their interests in various types of trust-like retirement accounts. See generally Patterson v. Shumate, 504 U.S. 753 (1992) (debtor's interest in ERISA-qualified pension plan may be excluded from the bankruptcy estate under §541(c)(2)). In 2005, Congress added §522(d)(12) to the Code, which permits debtors to exempt retirement benefits that "are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."

In this case, the Debtor could have claimed his interest in the 401(k) account as exempt under §522(d)(12), which would have put him in the position of asserting the §522(c) claims

described above.  However, he did not do so and I must apply the statute as written.  See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004).  The plain language of §522(c) mandates denial of the Debtor's request for relief.

### IV.  NWI'S MOTION

NWI, an unsecured creditor, also seeks relief from the automatic stay to resume pre-petition litigation against the Debtor.  Section 362(d) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay —
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d).

A distinct body of law has developed in applying the standard of "cause" under §362(d)(1) when relief from the automatic stay is requested by an unsecured creditor for the purpose of resuming state court litigation against the debtor.  The grant of such relief is relatively rare because it usually would contravene the purposes of the automatic stay.  See In re Chan, 355 B.R. 494, 498 (Bankr. E.D. Pa. 2006).  Nevertheless, in some cases, the hardship to the movant as compared to the hardship to the debtor may justify granting stay relief.  Or, analyzed slightly differently, the equities of freeing the creditor from the restraint of the automatic stay may outweigh the potential negative impact that such relief would have on the bankruptcy process.  See In re Irwin, 457 B.R. 413, 426 (Bankr. E.D. Pa. 2011).  In making these determinations, the bankruptcy court must consider the "totality of the circumstances," see In re Wilson, 116 F.3d 87,

-17-

90 (3d Cir. 1997), and is accorded considerable discretion in evaluating the competing interests, see In re Szymanski, 413 B.R. 232, 253 (Bankr. E.D. Pa. 2009); accord Matter of Holtkamp, 669 F.2d 505, 507 (7th Cir. 1982).[22]

My evaluation of the competing interests in this case is informed by my discussion in Part III.B.2 of the nature of the claims in the District Court Action that NWI wishes to pursue. In particular, a material question is whether the claims are: (1) ordinary in personam claims against the Debtor (which may or may not be determined nondischargeable in the pending Adversary Proceeding) or (2) in rem setoff claims against the Debtor's 401(k) Plan benefits. Either way, however, I conclude that relief from the automatic stay is not warranted.

To the extent that the District Court Action is conceptualized as a traditional, (allegedly) nondischargeable in personam claim against the Debtor, I perceive no reason to grant stay relief. The factual issues in the District Court Action and the Adversary Proceeding are substantially the same. Litigation of those issues in both courts obviously would be duplicative and unduly burdensome for the Debtor. In these circumstances, litigation of the issues presumptively should take place in the bankruptcy court. See Chan, 355 B.R. at 500-01 (referring to the bankruptcy court's exclusive jurisdiction to determine dischargeability of debts under 11 U.S.C. §523(a)(2), (4) and (6)). NWI has advanced no compelling reason for departing from this legal principle.

If the District Court Action is treated as an in rem setoff proceeding, the analysis is more complicated. On the one hand, I have already determined that 11 U.S.C. §522(c)(1) does not bar NWI from asserting setoff claims against the 401(k) benefits. On the other hand, I harbor serious

---

[22] For a non-exclusive list of factors courts may consider in making these decisions, see Chan, 355 B.R. at 499-500.

doubts: (1) whether NWI's claim truly is in the nature of a setoff that is preserved by 11 U.S.C. §553;[23] and (2) even if it is a preserved setoff, whether the claim is cognizable under 29 U.S.C. §1109.[24] Whatever my reservations may be on the merits, these issues are properly left to the court in the District Court Action. However, granting relief from the automatic stay to permit resolution of those two (2) threshold issues also could open the door to NWI's prosecution of its entire claim, resulting in the unduly burdensome duplication of the Adversary Proceeding litigation. In these circumstances, I conclude that the balance tips in favor of denying the request for relief from the automatic stay.[25]

---

[23] See n.21, supra.

[24] In footnote 21, I pointed out that it appears that NWI seeks to invade the Debtor's 401(k) account to redress alleged harm suffered by NWI in its capacity as his employer as opposed to harm suffered by the 401(k) Plan. This reasoning casts serious doubt on the merits of NWI's legal theory in the District Court Action. See Guidry, 493 U.S. at 373 (even if §1109 remedy overrides anti-alienation provision of ERISA, 29 U.S.C. §1056(d)(1), it does so only for injuries to pension plan itself, not injuries to plan sponsor); see also Coar v. Kazimir, 990 F.2d 1413, 1424 (3d Cir. 1993) (anti-alienation provision of ERISA does not preclude setoff of benefits against damages to plan itself caused by plan beneficiary). I note also that if NWI's ERISA §1109 claim lacks merit, then the Debtor may have a claim against NWI under ERISA for wrongfully withholding the Debtor's benefits. See 29 U.S.C. §1132(a)(1)(B).

[25] I have considered the possibility of granting limited relief from the automatic stay solely for the purpose of permitting the district court to consider the threshold issues that I have identified in the text above, but continuing to stay any further adjudication of the merits of the District Court Action (assuming the court found that NWI has stated a cognizable claim). This could serve the purpose of resolving the parties' immediate dispute whether the 401(k) Plan fiduciary is obligated to deliver at least some of the 401(k) benefits to the Debtor. However, I am somewhat reluctant to micromanage a case on the federal district court's docket and concerned that this would result in inefficient, piecemeal litigation. Also, this is not a result requested by the parties. If both parties believe that limited relief from the automatic stay is a better outcome than the outright denial of both motions, I am willing to consider the matter further.

## V.  CONCLUSION

For the reasons set forth above, I will deny both the Debtor's Motion and NWI's Motion.

I am aware that, to some extent, the denial of both motions leads to an unsatisfactory result.  Both parties have expressed a desire that a court – either this court or the Indiana district court – decide, as soon as possible, whether the Debtor is entitled to immediate access to some or all of his 401(k) benefits.  However, I have determined that there is no presently cognizable bankruptcy issue that would make it appropriate for this court to adjudicate the parties' competing claims to the 401(k) assets that are not part of the bankruptcy estate.  Nor do I believe that NWI should be permitted to resume prosecution of litigation that duplicates the nondischargeability adversary proceeding pending in this court, at least without the Debtor's consent.

An order consistent with this Memorandum will be entered.

Date:  **July 30, 2012**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**